IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | Case No. CF0313-21 |
| vs. | |
| NICHOLAS WAYNE MOORE | **DECISION AND ORDER** (Defendant's Motion to Compel Discovery; Motion for Continuance) |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on Nicholas Wayne Moore's ("Defendant") Motion to Compel Discovery; Motion for Continuance (Motion to Compel Discovery"). Attorneys David J. Lujan, William L. Gavras, and Michael F. Phillips appeared for Defendant. Assistant Attorney General Sean E. Brown appeared for the People of Guam ("People'). In accordance with its ruling from the bench on October 31, 2022, the Court now issues the following order **DENYING** Defendant's Motion to Compel Discovery.

## BACKGROUND

Trial in this case is proceeding upon an amended superseding indictment on the following charges: (1) Two Counts of Aggravated Assault (As a Second Degree Felony) with Two Counts of the Special Allegation: Deadly Weapon Used in the Commission of a Felony; (2) Terrorizing (As a Third Degree Felony) with the Special Allegation: Deadly Weapon Used in the Commission of a Felony; and (3) Possession of an Unregistered Firearm (As a Third

Degree Felony). Am. Superseding Indictment, June 13, 2022. Jury selection commenced on June 15, 2022, and a petit jury was sworn in on August 11, 2022. Minute Entry, June 15, 2022; Minute Entry, Aug. 11, 2022. Defendant filed the instant motion. Mot. to Compel Discovery; Mot. for Continuance, Oct. 25, 2022. The People filed an opposition. People's Opp'n. to Def.'s Mot. for Discovery, Oct. 27, 2022. Defendant filed a reply. Def.'s Reply to People's Opp'n. to Mot. to Compel Discovery; Mot. for Continuance, Oct. 28, 2022. The Court held a Motion Hearing. Minute Entry, Oct. 31, 2022. Upon considering the parties arguments and the applicable law, the Court denied Defendant's Motion to Compel Discovery. *Id.*

## DISCUSSION

Defendant states that Brian Mendiola's ("Victim") testimony on October 18, 2022, discussed a "police raid" on his residence, where officers entered with "guns blazing." Mot. to Compel Discovery at 1. Defendant asserts that he was not aware of a police raid on Victim's residence and requests that Court "order the prosecution to immediately provide Defendant with all remaining discovery." *Id.* at 8. The People state that Detective Gogo informed the People that a raid of Victim's residence did not occur. People's Opp'n. to Def.'s Mot. for Discovery at 2. The People assert that "[j]ust because Victim felt like the interaction was excessive does not mean the police carried out an actual raid." *Id.* at 1–2.

The Court first notes that Defendant should have filed this motion with a request to shorten time because this case is mid-trial and the Court has can obligation to expedite the proceedings. Additionally, Victim's direct examination occurred October 18, 2022, and Defendant did not file this motion until October 25, 2022—a week after Victim's direct examination. The Court reminds Defendant that he should be expeditious in preparing his motions to avoid an unnecessary delay to trial.

Title 8 G.C.A. § 70.10–70.45 constitute Guam's discovery statutes. Title 8 G.C.A. § 70.10(a) states specific material the prosecuting attorney must disclose to the defendant's attorney. Title 8 G.C.A. § 70.15(a) states "[e]xcept as otherwise provided by this Section and §§ 7.20 and 7.30, upon noticed motion by the defendant and a showing of materiality to the preparation of his defense and that the request is reasonable, the court in its discretion may order the prosecuting attorney to disclose to the defendant's attorney any relevant material and information not covered by § 70.10." "The court possesses discretion to order the prosecuting attorney to disclose relevant material and information not covered by section 70.10." *Id.* The Supreme Court of Guam has encouraged a liberal and broad reading of Guam's discovery statutes. *People v. Laxamana*, 2001 Guam 26 ¶ 53.

The People called Victim to testify on October 18, 2022, and it finished its direct examination that same day. Minute Entry, Oct. 18, 2022. Defense counsel requested the Court delay the cross-examination of Victim until after the Jury Viewing, and the Court granted defense counsel's request. Minute Entry, Oct. 21, 2022. Prior to beginning cross-examination, Defendant filed this motion. Mot. to Compel Discovery; Mot. for Continuance. At the motion hearing, the Court encouraged Defendant to call Detective Gogo—outside the presence of the jury—to testify under oath that a raid of Victim's residence did not occur in this case, and to explain the interactions that took place in this case between Victim and police officers. Digital Recording at 9:50:14–11:23:05 (Mot. H'rg. Oct. 31, 2022). The Court also encouraged Defendant to call Victim—outside the presence of the jury—to the stand to have him clarify the statements he made on direct examination. *Id.* The Court notes that during the time of this motion hearing, both witnesses were present in the courthouse and available to testify immediately. Alternatively, defense counsel could have clarified Victim's statements during

cross-examination. However, Defendant declined to call either witness to the stand. When the Court asked Defendant if he would be calling Victim to the stand during the motion hearing, defense counsel stated "based on what Mr. Mendiola said, I'm not sure there's any reason to go any further. He was under oath, he described in detail what happened pursuant to questioning by Mr. Brown, I quoted just the two paragraphs, what more is there?" Digital Recording at 9:50:14–10:09:23 (Mot. H'rg. Oct. 31, 2022). Defendant also contended that the People failed to deny Defendant's allegations in a sworn declaration from Detective Gogo. Digital Recording at 10:09:23–10:25:30 (Mot. H'rg. Oct. 31, 2022). Yet, Defendant could have asked Detective Gogo to deny these allegations under oath if he had called Detective Gogo to the stand during the motion hearing. The Court believes that it would have been helpful to hear testimony from Victim and Detective Gogo during the motion hearing. Instead, Defendant insisted that the People make an offer of proof under oath that a police raid of Victim's residence did not occur. Digital Recording at 10:25:30–11:23:05 (Mot. H'rg. Oct. 31, 2022). The People made an offer of proof—not under oath[1]—that a police raid of Victim's residence did not occur. *Id.*

The Court reviewed the report generated by Office of the Attorney General Investigator Henry James October 27, 2022, following his phone interview of Detective Gogo and the Victim's testimony on direct examination. Upon reviewing that material, the Court found that Defendant has not made a showing that the People possess any material and information related to a police raid of Victim's house. The Court finds no reason that Detective Gogo's

---

[1] Both the People and the Court were uncomfortable with Assistant Attorney General Sean Brown stating under oath that information and material regarding a raid of Victim's residence did not occur in this case because Assistant Attorney General Sean Brown does not know with certainty what material and information Guam Police Department possesses. Furthermore, Guam Rules of Evidence 103(a)(2) does not require an offer of proof to be made under oath.

statement contained in the report generated by Investigator James is inaccurate; if Guam Police Department ("GPD") maintains that it does possess material or information regarding a raid of Victim's house in this case, then it does not exist. It is unreasonable to request material and information that does not exist.

Victim testified to the following on direct examination:

> A few months later, maybe more than a few months later, there was this, like, I believe it was—it went all the way into mid-summer that CID came to my house. They came, you know, guns blazing, full on—full on team, four cars. I'm not gonna lie, I was intimidated. The—There were special investigators involved, and they woke me up, you know. They woke me up. You know, my (indiscernible 3:32:16) they, you know, they told me "in the kay" (sic), this is—You know, "We know what happened to you, and we're not playing around, and we know that you lied to us the first time. We know what happened, and right now this is a matter that's bigger than you, and we're going to need your full cooperation." From then they took me onto Tiyan, and then that's when I informed them of the actual incident and how it really happened, and how I was really shot.

The Court acknowledges that Victim's testimony suggests that his interaction with the police does not comport to standard protocol for an interview. It would have been helpful for the People to ask Victim during direct examination to clarify if anything besides an interview occurred. Even so, nothing in Victim's statement suggests that GPD searched Victim's residence; rather, his statement implies that GPD transported him to the precinct for an interview. Whether the statement "guns blazing" meant that the officers had their guns drawn could have been clarified by questioning Victim during the motion hearing. Why GPD sent four police vehicles could have been clarified by questioning Detective Gogo during the motion hearing. Defendant may call these witnesses when he presents his case to clarify these questions.

Defendant also requested that the Court order the People disclose any information and material it possesses of any police raids of Victim's residence, even if they occurred in other

cases. Digital Recording at 11:18:06–11:23:05 (Mot. H'rg. Oct. 31, 2022). The Court declined to order the People to turn over all discovery related to any raids on Victim's residence in any case. *Id.* The Court finds information and material of police raids on Victim's residence in other cases is not material to Defendant's preparation of his defense. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *People of Guam v. Fisher*, 2002 Guam 2 ¶ 13 (*citing United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). "A 'reasonable probability' is probability sufficient to undermine confidence in the outcome." *Id.* It is not evident to the Court that Defendant's inability to view information about police raids of Victim's residence in other cases would change the result of this proceeding. The People have disclosed information about Victim's pre-trial case to Defendant, which Defendant may—subject to admissibility constraints—use to impeach Victim. Information that other people who reside at Victim's residence have been subject to police raids is irrelevant to this case.

The Court reminds the People that pursuant to 8 G.C.A. § 70.45, it has a continuing duty to disclose any additional material or information it discovers.

## CONCLUSION AND ORDER

For the above reasons, the Court **DENIES** Defendant's Motion to Compel Discovery.

SO ORDERED, this ___7th___ day of __November__ 2022.

_____
HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam